UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IAN SHOWALTER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>APARTMENT MANAGEMENT CONSULTANTS LLC; SAM CARTER,<br><br>　　　　　　Defendants. | Case No. 3:23-cv-06174-TMC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION |

This case arises from Plaintiff Ian Showalter's former employment with Defendants Apartment Management Consultants, LLC ("AMC") and Sam Carter, the property manager at AMC and Showalter's supervisor. *See* Dkt 1-1 ¶ 2. Showalter alleges AMC 1) discriminated against him because of his disability; and 2) retaliated against him when he requested reasonable accommodations, among other claims. *See id.* at 5. Defendants now move to compel arbitration of all claims. Dkt. 13 at 1. Because the arbitration agreement between Showalter and AMC has an enforceable delegation clause, the Court GRANTS Defendants' motion to compel arbitration.

**I.　BACKGROUND**

In February 2022, AMC hired Showalter as a Maintenance Supervisor at AMC's Carriage Park Apartments property. *See* Dkt. 1-1 ¶ 10; Dkt. 14 ¶ 4.  On his first day of work, Carter presented Showalter with a series of onboarding documents to sign, including a document

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION - 1

entitled Binding Arbitration Agreement ("Arbitration Agreement"). *See* Dkt. 16-2 ¶¶ 3–4; Dkt. 14 ¶ 7. Because Showalter had difficulty accessing his employee portal, Carter logged into his account for him and gave brief, verbal descriptions of the onboarding documents, including the Arbitration Agreement. *See* Dkt. 16-2 ¶¶ 3–4. Showalter signed the documents, including the Arbitration Agreement, on that same day. *See* Dkt. 16-1 at 6. Showalter states in his declaration that Carter reviewed the documents with him "quickly" and he "felt hurried to agree" to them so he could return to work. *See* Dkt. 16-2 ¶¶ 3–4. Showalter claims he was never given a "reasonable opportunity to review" or "negotiate" their content. *See id.* ¶¶ 4–5.

The Arbitration Agreement stated in relevant part that the employee "acknowledges that any controversy or claim arising out of or relating to Employee's employment with AMC shall be settled by final and binding arbitration." Dkt. 16-1 at 4. The agreement specifies that it extends to "claims of discrimination and harassment . . . including but not limited to . . . the Americans with Disabilities Act . . . and any corresponding state statutes." *Id.*

The scope of the Arbitration Agreement is clarified later in the document:

> The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, including any disputes concerning the validity and enforceability of the Agreement.

*Id.* at 5.

Finally, above Showalter's signature line, the Arbitration Agreement concludes in all-caps:

> EMPLOYEE HAS READ, UNDERSTANDS, AND VOLUNTARILY AGREES TO BE LEGALLY BOUND BY ALL OF THE ABOVE TERMS. EMPLOYEE UNDERSTANDS THAT BY AGREEING TO THIS BINDING ARBITRATION AGREEMENT, BOTH EMPLOYEE AND AMC GIVE UP RIGHTS TO SUE EACH OTHER IN COURT FOR DISPUTES RELATED TO EMPLOYEE'S

EMPLOYMENT AT AMC, AND THE RIGHT TO A TRIAL BY JURY. *Id.* at 6.

According to the complaint, Showalter experienced substantial challenges in performing his job duties at AMC because of a previous brain surgery. *See* Dkt. 1-1 ¶¶ 11–12. He alleges that Carter made derogatory remarks about his disability and work performance. *See id.* ¶ 14. Showalter further alleges that Carter and AMC placed him on unpaid leave after he requested reasonable accommodations, under the guise of requiring more medical information from him. *See id.* ¶¶ 15–18. Showalter claims that Defendants' actions eventually discouraged him from pursuing his reasonable accommodation request and returning to work. *See id.* at 19.

On November 14, 2023, Showalter filed a complaint in Clark County Superior Court alleging claims of discrimination under the Americans with Disabilities Act (ADA) and the Washington Law Against Discrimination (WLAD). Dkt. 1-1 at 5. On December 21, 2023, Defendants removed the case to this Court. *See* Dkt. 1 at 1–2. On July 29, 2024, Defendants moved to compel arbitration of Showalter's claims and to stay this action pending the outcome of the arbitration. *See* Dkt. 13 at 1.

Defendants contend that Showalter entered into a valid agreement to arbitrate under the Federal Arbitration Act ("FAA"). *See* Dkt. 13 at 3–5. Defendants also argue that the Arbitration Agreement delegates any questions of arbitrability, including the enforceability of the agreement itself, to an arbitrator. *See* Dkt. 17 at 1–2. Showalter argues the Arbitration Agreement was procedurally unconscionable and thus unenforceable. *See* Dkt. 16 at 3–6.

## II.     LEGAL STANDARDS

The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

agreement for arbitration may petition any [appropriate] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

As to the former, the Court must make the threshold determination that a valid contract was formed before ordering arbitration. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Courts apply state contract law to determine whether the parties formed a valid agreement to arbitrate. *Lowden*, 512 F.3d at 1217 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties appear to agree that Washington contract law applies. *See* Dkt. 13 at 4; Dkt. 16 at 4. In Washington, "[a]rbitration agreements stand on equal footing with other contracts." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 47, 470 P.3d 486 (2020) (citations omitted). And "mutual assent is required for the formation of a valid contract. It is essential to the formation of a contract that the parties manifest to each other their mutual assent to the same bargain at the same time." *Id*. at 48 (cleaned up).

As to the latter, the presence of a delegation clause "limits the issues that a court may decide." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (quoting *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022)). Such a clause "delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all." *Caremark*, 43 F.4th at 1029 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "When the parties have 'clearly and unmistakably' delegated questions regarding

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION - 4

arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon*, 97 F.4th at 1194; *see also Caremark*, 43 F.4th at 1029 ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

### III.   DISCUSSION

**A.   The Arbitration Agreement was validly formed.**

The formation of an arbitration agreement depends on mutual assent to "the same bargain at the same time." *Burnett*, 196 Wn.2d at 48 (cleaned up). "Mutual assent is gleaned from outward manifestations and circumstances surrounding the transaction." *Id.* at 50.

In *Burnett*, the plaintiff, a former pizza delivery driver alleging wage and hour claims, was required to sign an "Employee Relationship Agreement" ("ERA") at a mandatory employee orientation before beginning work. *Id.* at 42-43. The ERA did not mention arbitration. *Id.* Instead, in a section entitled "Rules and Policies," the ERA referred to a separate document called the "Little Book of Answers." *Id.* Although Pagliacci, his employer, gave Burnett a copy of the Little Book of Answers at the orientation, he was "told to read it at home," and the ERA similarly instructed: "On your own initiative you will learn and comply with the rules and policies outlined in our Little Book of Answers." *Id.* The Little Book of Answers contained a mandatory arbitration policy, which Pagliacci argued was incorporated by reference into Burnett's signed Employee Relationship Agreement. *See id.* at 44–46. The Washington Supreme Court ruled for Burnett, holding "as a threshold matter" that Burnett never assented to a mandatory arbitration provision because he had no notice of the arbitration agreement when he signed the ERA. *Id.* at 47; *see also Erhart v. TriNet HR Xi Inc.*, No. 3:23-cv-05882-TMC, 2024 WL 1255779, at *5 (W.D. Wash. Mar. 25, 2024) (finding no mutual assent when a former

software engineer signed an offer letter purporting to incorporate his employer's terms and conditions, including a mandatory arbitration provision, but where the offer letter did not mention arbitration and indicated the employee would receive the terms and conditions later in connection to "benefits" information).

This case is distinguishable from *Burnett* and *Erhart*. In those cases, the arbitration agreement itself was neither presented separately to the employee nor separately signed. *See Burnett*, 196 Wn.2d at 49; *Erhart*, 2024 WL 1255779 at *5. Instead, in both cases, the employer argued the arbitration agreement was incorporated by reference when the employee signed a different agreement that made no mention of arbitration. *See Burnett*, 196 Wn.2d at 44–46; *Erhart*, 2024 WL 1255779 at *2–3.

In this case, AMC sent the Arbitration Agreement to Showalter's employee portal on his first day of work. *See* Dkt. 14 ¶ 7; Dkt. 16-2 ¶¶ 2–3. The separate, standalone document was entitled "Policy Acknowledgement: Binding Arbitration Agreement." *See* Dkt. 16-1 at 4. Because of Showalter's difficulty accessing his employee portal, Carter logged into his account for him and verbally described the onboarding documents in the portal, including the Arbitration Agreement. *See id.* ¶ 3. And when Showalter signed the agreement, he signed directly below an all-caps statement that he was voluntarily agreeing to arbitrate his disputes with AMC. *See* Dkt. 16-1 at 5; Dkt. 13 at 4. Whereas the employees in *Burnett* and *Erhart* "had no notice of the arbitration provision" when they signed their employment agreements, Showalter had both "knowledge of and assented to" the Arbitration Agreement itself. *Burnett*, 196 Wn.2d at 49, 63 (cleaned up); *see also Erhart*, 2024 WL 1255779 at *4–5. Showalter's argument that he "felt hurried" by Carter and did not have a reasonable opportunity to review or negotiate the Arbitration Agreement may go to his procedural unconscionability claim, but it does not negate his assent where he acknowledges that he signed the agreement and it was described to him.

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION - 6

Dkt. 16-2 ¶¶ 3–5; *see also Burnett* 196 Wn.2d at 54 (procedural unconscionability includes the manner in which the contract was entered and whether the employee had a reasonable opportunity to understand the terms). The Arbitration Agreement was validly formed.

**B.      Showalter's unconscionability challenge to the Arbitration Agreement falls within the scope of the enforceable delegation clause.**

Where there is "clear and unmistakable" evidence that the parties delegated threshold arbitrability questions in their agreement to an arbitrator, it is the arbitrator rather than the court that determines the scope of the agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citations omitted). "Arbitrable threshold issues may include . . . whether the arbitration agreement is unconscionable." *Fli-Lo Falcon*, 97 F.4th at 1199 (cleaned up).

In *Rent-A-Center*, an employer moved to compel arbitration on a former employee's discrimination claims. *See* 561 U.S. at 65. The former employee argued the arbitration agreement was unenforceable on the grounds that it was unconscionable. *See id.* The arbitration agreement included a delegation clause, which stated in relevant part that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 66. The Court affirmed the lower court's finding that the delegation clause "clearly and unmistak[ably]" delegated to the arbitrator "the exclusive authority to decide whether the Agreement to Arbitrate is enforceable." *See id.* at 69 n.1 (cleaned up); *see also Brennan. v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (finding an arbitration agreement's incorporation of American Arbitration Association rules granting the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement," is "clear and unmistakable" evidence the parties agreed to arbitrate arbitrability).

In this case, the delegation clause in AMC's Arbitration Agreement provides "clear and unmistakable" evidence that the contracting parties—Showalter and AMC—agreed to delegate threshold issues of arbitrability to the arbitrator, including whether the agreement is enforceable. *See Henry Schein, Inc.*, 586 U.S. at 69. Showalter signed the Arbitration Agreement, which stated: "The arbitrator shall be vested with authority to determine any and all issues pertaining to the dispute/claims raised, including any disputes concerning the validity and enforceability of the Agreement." Dkt. 14 at 6. As in *Rent-A-Center*, Showalter's contention that the arbitration agreement is unconscionable is an argument about the "enforceability" of the agreement, which is squarely contemplated by the delegation clause. *See* 561 U.S. at 74; Dkt. 16 at 4.

Showalter also fails to meet his burden to challenge the delegation clause itself. "When there is clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability . . . the only remaining question is whether the particular agreement to delegate arbitrability—the [d]elegation [p]rovision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (internal quotation marks and citation omitted). The Ninth Circuit recently addressed "what a party must do to specifically challenge a delegation provision to ensure that a court can review its challenge." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023). Relying on *Rent-A-Center* and Ninth Circuit precedent, the court held that a party "resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Bielski*, 87 F.4th at 1009.

Here, Showalter does not specifically argue that the delegation provision of the Arbitration Agreement was unconscionable. *See* Dkt. 16 at 3. His opposition brief does not address the delegation provision at all. *See id.* This is fatal to Showalter's argument. *See Rent-a-Center*, 561 U.S. at 72 (Unless plaintiff "challenged the delegation provision specifically, we must treat it as valid . . . leaving any challenge to the validity of the Agreement as a whole for the

arbitrator"); *Brennan*, 796 F.3d at 1133 (arbitrator must decide unconscionability because plaintiff "failed to make any arguments specific to the delegation provision and instead argued that the arbitration agreement *as a whole* is unconscionable") (cleaned up).

Because Showalter does not attack the delegation provision in the Arbitration Agreement specifically, determining the presence (or absence) of procedural unconscionability is not properly before the Court and must be left to the arbitrator to decide. *Brennan*, 796 F.3d at 1133.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to compel arbitration. Dkt. 13. Showalter must initiate arbitration if he wishes to pursue his claims against Defendants. This case is STAYED pending the completion of arbitration proceedings. The parties are ORDERED to file a joint status report within 14 days of completing arbitration.

Dated this 24th day of October, 2024.

Tiffany M. Cartwright
United States District Judge